**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1563
_____

GURPREET SINGH,
                              Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
                              Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A208-676-674)
Immigration Judge:  Honorable Walter A. Durling
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on November 14, 2017

Before:  AMBRO, KRAUSE, and RENDELL, *Circuit Judges*

(Opinion filed:  November 15, 2017)
_____

OPINION[*]
_____

KRAUSE, *Circuit Judge*.

Petitioner Gurpreet Singh, a native and citizen of India, petitions for review of an

order of the Board of Immigration Appeals (BIA), which affirmed the Immigration

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7

Judge's (IJ) order of removal and denial of his requests for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). Because the BIA's decision was supported by substantial evidence, we will deny the petition for review.

## I. Background

Around three years ago, Singh, a Sikh living in Punjab, India, joined the Mann Party, a minority political party in that region. He quickly became a visible supporter of the party, attending meetings and rallies and putting up posters around his community. Singh alleges that, as a result, he became a target of the rival Badal Party, Punjab's majority party, whose members not only threatened him but violently attacked him two times, the second of which led to a 10-day stay in the hospital. To help him avoid the threats and violence, Singh's father sent him to stay with a family friend in Delhi, some 300 miles from Punjab, but, after the threats continued, Singh left Delhi and eventually made his way to the United States to seek asylum.

The Department of Homeland Security instituted removal proceedings against Singh, after which he formally applied for asylum as well as withholding of removal and CAT protection. After a hearing at which Singh testified, the IJ denied all three of his requests for relief and ordered him removed, concluding that he was not credible and that his corroborating evidence was insufficient. The BIA upheld the IJ's decision and dismissed Singh's appeal.

does not constitute binding precedent. 2

## II.    Jurisdiction and Standard of Review

The BIA had jurisdiction over Singh's appeal from the IJ's removal order under 8 C.F.R. § 1003.1(b)(3), and we have jurisdiction over his petition for review of the BIA's final order of removal under 8 U.S.C. § 1252(a).  Where the BIA issues its own opinion and relies on reasoning from the IJ's opinion, we review both decisions.  *Sandie v. Att'y Gen.*, 562 F.3d 246, 250 (3d Cir. 2009).  We review the BIA's legal conclusions de novo and its adoption of the IJ's factual findings for substantial evidence.  *Alimbaev v. Att'y Gen.*, 872 F.3d 188, 194, 196 (3d Cir. 2017).  Where, as here, the BIA also has adopted the IJ's credibility determination, we give that determination "exceptional deference."  *Id.* at 196.

## III.    Discussion

In his petition for review, Singh challenges the IJ's negative credibility finding and asserts that the IJ erred in rejecting the evidence corroborating his claims.  For the reasons set forth below, we reject both arguments.

### A.    The IJ's Credibility Finding

Singh initially contends that the IJ's credibility finding was based on three determinations that each lacked support in the record.  First, Singh disputes the IJ's conclusion that it is implausible he would be targeted—at least to the extent he claimed— for political persecution given that he was only a regular Mann Party worker.  In support of this challenge, Singh points to evidence in the record showing that "low level [Mann]

3

workers do face intimidation and political violence," Pet. Br. 12, and argues that where an "IJ bases an adverse credibility determination in part on 'implausibility' . . . , such a conclusion will be properly grounded in the record only if it is made against the background of the general country conditions," *Dia v. Ashcroft*, 353 F.3d 228, 249 (3d Cir. 2003) (en banc). Here, however, the IJ considered such country conditions, accepting the possibility that Singh would be subject to "violence from members of opposing political parties," but finding "not believable" the notion that, as a regular worker, Singh would be targeted by the Badal to the extent of, for example, an alleged "common effort" by Badal members to "locate him over 500 kilometers away" in Delhi. App. 9. Significantly, the portions of the record that Singh identifies, which describe political violence in India in general terms, do not undermine the IJ's conclusion on this point.

Second, Singh argues that the IJ erred in finding his affidavit inconsistent with his testimony as to whether, after he sought refuge in Delhi, Badal members traveled all the way from Punjab to Delhi to threaten him in person. But, as the BIA correctly concluded, this finding also was adequately supported by the record. Singh's affidavit nowhere mentioned that he received in-person threats in Delhi, and while he subsequently testified that he did receive such threats, he failed to provide any clear explanation for his failure to include this information in his affidavit.

Third, Singh asserts that the IJ erred in finding an inconsistency between, on the one hand, his testimony that he was attacked by Badal members on February 2, 2015, and

4

received treatment at a medical clinic that same day, and, on the other hand, a copy of the receipt from the medical clinic with a date reading "2-4-2015," App. 10. While Singh suggests that the IJ "fail[ed] to consider that it might simply be a mistaken date" on the receipt, Pet. Br. 11, the record shows, as the BIA noted, that the IJ did consider this possibility and found it "wholly unconvincing." App. 10. Although we agree with Singh that an isolated instance of a witness being unable to "recall [the] specific . . . date[]" of an event that occurred more than a year earlier might not, on its own, amount to more than an "insignificant testimonial inconsistenc[y]" itself, *Alimbaev*, 872 F.3d at 198 (quoting *Chen v. Gonzalez*, 434 F.3d 212, 220 (3d Cir. 2005)), the other evidence on which the IJ relied here was sufficient, in any event, to justify his credibility determination.[1]

Singh also contends that the IJ's credibility determination was based in part on two improper considerations outside the record: (1) the IJ's dismissive observation that over the past year he had held hearings on "well over 75 Indian nationals seeking asylum" and nearly all of their applications were "based upon violence from Badal Party members," App. 12; and (2) the IJ's admission that he independently "conducted an Internet search" that cast doubt on a portion of Singh's affidavit, App. 10. Singh is

---

[1] Singh also points out that the IJ erred in finding an inconsistency between his testimony and his affidavit as to whether he had sought assistance from the Indian police. The BIA expressly recognized this finding was error but still held that the IJ's negative credibility finding was "otherwise supported." App. 4. For the reasons we have explained, we agree.

correct that our deference to the IJ on credibility questions is "expressly conditioned on support in the record," *Jishiashvili v. Att'y Gen.*, 402 F.3d 386, 392 (3d Cir. 2005), and so we "expect . . . [IJs] . . . [to] confine[]" their decisionmaking to "evidence in the record" and not to venture into "impermissible conjecture." *Abdulrahman v. Ashcroft*, 330 F.3d 587, 598 (3d Cir. 2003). And it does appear that the IJ here exceeded the bounds of the record. We conclude, however, that this error is not a due process violation and thus is insufficient to disturb the IJ's ultimate determination. As the BIA explained, the IJ did not "rel[y] on either of th[ose] comments in his holding," App. 3, and, for the reasons we have discussed, "it remains true that the IJ engaged in [an] otherwise appropriate adverse credibility determination[]," *Abdulrahman*, 330 F.3d at 598.

In sum, we conclude that the BIA did not err in upholding the IJ's credibility determination.

## B. The IJ's Rejection of Corroborating Evidence

Singh challenges separately the IJ's rejection of corroborating evidence in the form of affidavits from Singh's family and acquaintances in India. The IJ considered these affidavits, but found them "suspicious" on the grounds that they were all "very similar," sharing the "same format as well as the same letterhead and typewriting." App. 11. While Singh argues we should reject this conclusion as "speculat[ion]" and "mere conjecture," Pet. Br. 14, the IJ carefully examined each of the affidavits in question and based his conclusion on the undisputed similarities among them. Under these circumstances, we agree with the BIA that the IJ's rejection of the affidavits was

6

"supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Alimbaev*, 872 F.3d at 196.

\* \* \*

In sum, we conclude that both the IJ's negative credibility finding and his rejection of the alleged corroborating evidence were supported by substantial evidence, and we therefore will uphold the BIA's denial of Singh's request for asylum. As "the threshold for asylum is lower than for protection under the withholding of removal or CAT provisions," our denial of Singh's asylum request "necessarily requires that [his] CAT and withholding claims be rejected as well." *Yu v. Att'y Gen.*, 513 F.3d 346, 349 (3d Cir. 2008). For the foregoing reasons, the petition for review will be denied.